# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

RC3, INC.,

        Plaintiff,

v.                                      Case No:  3:12-cv-193-J-37TEM

JUSTIN BIEBER,

        Defendant.

_____/

## ORDER

This cause is before the Court on Defendant Justin Bieber's ("Bieber") Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Doc. No. 10), filed on May 25, 2012, and Plaintiff RC3, Inc.'s ("RC3") Response to Defendant's Motion to Dismiss (Doc. No. 11), filed on June 8, 2012. After considering the relevant legal authority, the motion, the response, and the pertinent portions of the record, the Court finds that the motion is due to be granted.

## I.  BACKGROUND

Bieber is a California resident and a well-known celebrity. (Doc. No. 5 ¶¶ 7, 8.) RC3 is a Florida corporation that developed a game application titled "Joustin' Beaver" (the "App") for iPhones, iPads, and Android phones. (Doc. No. 5 ¶ 9.) "In an effort to comment []on [Bieber's] life," the App portrays a lance-wielding beaver wearing a purple sweater and riding a log. (*Id.*) While navigating the beaver down a river, the player must joust with "Phot-Hogs" attempting to take his photograph, sign "Otter-graphs," and avoid the "whirlpool of success," which will lead the beaver out of control.  (*Id.*)

In February 2012, RC3 and Bieber held multiple conversations to discuss the App. (Doc. No. 5 ¶ 10.) On February 13, 2012, Bieber's counsel sent RC3 a cease-and-desist letter that advised RC3, "[Y]ou have no right to utilize our Client's name, image, likeness, life story or identity in or in connection with the App."  (Doc. No. 5-1, p. 1.) The letter stated the App may constitute a number of violations, including:

> trademark infringement, unfair competition under the Lanham Act and under state law, dilution, false designation of origin, passing off, misappropriation of name for commercial purposes, misrepresentation, violation of rights of publicity, and interference with [Bieber's] contractual obligations to third parties . . . .

(*Id.*) The letter further demanded RC3 contact Bieber to confirm cessation of all unauthorized activity and to provide an accounting for revenues received from the App. (*Id.* at 1-2.) In conclusion, Bieber's counsel stated:

> If we do not hear from you within two (2) business days in an attempt to informally resolve this matter, our Client has instructed us to take any and all legal action necessary to vindicate our Client's rights with respect to your Unauthorized Activities.

(*Id.* at 2.) After RC3 received the letter, it submits that it further discussed the issue with Bieber's counsel but failed to achieve a resolution. (Doc. No. 5 ¶ 13.)

Consequently, RC3 filed a Complaint for Declaratory Judgment (Doc. No. 1) on February 24, 2012, and an Amended Complaint on March 1, 2012 (Doc. No. 5). In the Amended Complaint, RC3 asks the Court to declare that it, by continued use and promotion of the App, has not and will not commit the violations alleged by Bieber. (Doc. No. 5 ¶ 16.) On May 25, 2012, Bieber filed a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Doc. No. 10), arguing that the Court should dismiss the Amended Complaint against him because he lacks sufficient contacts with the state of Florida to justify a Florida court's exercise of personal

jurisdiction over him. (Doc. No. 10 ¶¶ 1, 2.) Additionally, Bieber argues that the Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, asserting that "the Court should decline to hear this preemptive declaratory relief action." (Doc. No. 10, p. 7.) On June 8, 2012, RC3 filed a response to Bieber's motion. (*See* Doc. No. 11.) The Court now turns to those arguments.

## II.  DISCUSSION

### A.  THE LAW OF PERSONAL JURISDICTION

Evidentiary hearings on the issue of personal jurisdiction are at the discretion of the Court. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006). When the Court chooses not to conduct an evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a *prima facie* case of personal jurisdiction over a nonresident defendant. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 809 (11th Cir. 2010); *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. *Morris*, 843 F.2d at 492. "If a plaintiff pleads sufficient material facts to establish a basis for personal jurisdiction and a defendant then submits affidavits controverting those allegations, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction, unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.' " *Whitney Info. Network, Inc. v. Xcentric Venture, LLC*, 199 Fed. Appx. 738, 741 (11th Cir. 2006).

"Where the evidence presented by the parties' affidavits and deposition testimony conflicts, the [C]ourt must construe all reasonable inferences in favor of the

non-movant plaintiff." *PVC Windoors, Inc.*, 598 F.3d at 810 (citation and internal quotation marks omitted). "With respect to those points of the competing affidavits that do not conflict, however, 'the [C]ourt may accept as true the applicable allegations in the complaint for the purposes of resolving jurisdictional issues . . . .' " *Crowe v. Paragon Relocation Res., Inc.*, 506 F. Supp. 2d 1113, 1119 (N.D. Fla. 2007) (citation omitted).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(2), the Court must engage in a two-part analysis. *Madara v. Hall*, 916 F.2d 1510, 1514 (citation omitted); *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). In order to determine whether this Court has personal jurisdiction over Bieber in this action, it first must determine whether there is a basis for jurisdiction under Florida's long-arm statute, Fla. Stat. § 48.193. *Madara*, 916 F.2d at 1514. Second, if it finds that personal jurisdiction exists under Florida's long-arm statute, the Court must then consider whether Bieber's contacts with the state of Florida are sufficient to satisfy the Due Process Clause of the Fourteenth Amendment to the United States Constitution such that maintenance of the suit in Florida does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315-17 (1945); *Venetian Salami Co.*, 554 So. 2d at 502. If both prongs of the jurisdictional test are satisfied, then the Court may exercise personal jurisdiction over Bieber. *Madara*, 916 F. 2d at 1516. Because the Court finds that the Florida's long-arm statute jurisdictional test is not satisfied here, as discussed *infra*, the Court will not engage in the Due Process Clause analysis. *See PVC Windoors, Inc.*, 598 F.3d at 807 ("Only where the long-arm statute provides jurisdiction do[es the Court] proceed to the second step . . . .").

## B. FLORIDA'S LONG-ARM STATUTE

This Court examines the Florida's long-arm statute as would the Florida Supreme Court because the reach of the statute is a question of state law. *See Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890-91 (11th Cir. 1983). The Court must strictly construe the long-arm statute. *Id.* at 891.

The statute provides for two distinct categories of personal jurisdiction: specific jurisdiction conferred under § 48.193(1) and general jurisdiction conferred under § 48.193(2). *Miller v. Berman*, 289 F. Supp. 1327, 1331 (M.D. Fla. 2003) (citing *Nw. Aircraft Capital Corp. v. Stewart*, 842 So. 2d 190, 193 (Fla. 5th DCA 2003)). A court may exercise specific jurisdiction over a nonresident defendant only when the plaintiff's cause of action arises from or is directly related to the defendant's contacts with the forum state. *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1221 n.27 (11th Cir. 2009); *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 n.3 (11th Cir. 2006) (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000)). The requirement that the plaintiff's cause of action "arises from" the defendant's activities is broader than the concept of "proximate cause" and is satisfied by a showing of some "direct affiliation, nexus, or substantial connection between the cause of action and the [defendant's] activities within the state." *Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1269 (S.D. Fla. 2001) (citation and internal quotation marks omitted). General jurisdiction refers to the power of a court to adjudicate any cause of action involving a particular defendant if that defendant "engaged in substantial and not isolated activity" within Florida, irrespective of whether

the claim asserted arises from that activity. *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

    The pertinent subsection of the statute provides:

1. Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

    a. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

Fla. Stat. § 48.193(1)(a). In order to establish that a nonresident defendant is carrying on a business or business venture in Florida, the Court must consider whether the sum of Bieber's collective business activities shows a general course of business activity in the state for pecuniary benefit. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627-28 (11th Cir. 1996). Factors relevant to, but not dispositive of, this analysis include the presence and operation of an office in Florida; the possession and maintenance of a license to do business in Florida; a substantial number of Florida clients served; and a large percentage of overall revenue gleaned from Florida clients. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005).

## C.  APPLICATION AND ANALYSIS

    In the Amended Complaint, RC3 alleges that this Court has personal jurisdiction over Bieber but does not specify under which section of Florida's long-arm statute jurisdiction is conferred. (*See* Doc. No. 5 ¶ 4.) RC3 simply asserts that Bieber does business and has substantial and ongoing contacts within Florida. (*Id.*) Based on this language, the Court notes that it would appear that *general* personal jurisdiction is alleged. However, in Bieber's motion and RC3's response, the parties limit their

arguments to the application of § 48.193(1)(a), which of course confers *specific* personal jurisdiction only. Accordingly, the Court limits its analysis to whether the exercise of *specific* personal jurisdiction over Bieber is warranted.

In his motion, Bieber argues that the case should be dismissed for lack of personal jurisdiction because he "has intermittently performed in Florida over the last four years and . . . participated in recording sessions . . . ." (Doc. No. 10, p. 2; Bieber Decl. Ex. 1, ¶¶ 3-4 ("From 2009 to 2012, I have performed in Florida or made personal appearances on [thirteen] occasions. . . . On February 6 and 7, 2010, I recorded a song at King of Kings Studio in Miami[,] Florida. From February 1 to February 5, 2012, I also recorded at the Record Plant in Miami, Florida for a forthcoming album.").) Bieber declares that he "does not own any property . . . nor [does he] have any permanent employees or agents in Florida." (Doc. No. 10, p. 4 (citing Bieber Decl. Ex. 1, ¶ 2).) Furthermore, Bieber declares that he does "not maintain a business office in Florida." (Bieber Decl. Ex. 1, ¶ 2.) Therefore, he argues, his Florida "contacts . . . do not rise to the level of a 'general course of business activity in the state for pecuniary benefit.' " (Doc. No. 10, p. 4 (quoting *Sculptchair, Inc.*, 94 F.3d at 627).)

He further submits that even if the Court were to find that his contacts rise to the level of conducting or engaging in business in Florida, "[t]hese contacts have nothing to do with the claims raised in this action and they are insufficient for this Court to exercise jurisdiction . . . pursuant to . . . [the] Florida['s] long-arm statute . . . ." (*Id.* at 2; *Id.* at 5 ("None of Bieber's actual contacts with Florida gave rise to the claims in this lawsuit.").) Finally, Bieber asserts that to the extent that RC3 is attempting to allege personal jurisdiction on the basis of the cease-and-desist letter Bieber's transactional counsel

sent to RC3, this argument should be dismissed. (*Id.* at 5 (asserting that "accepting RC3's argument would mean that jurisdiction can be established merely by sending a cease[-]and[-]desist letter to another state").)

In response, RC3 alleges that Bieber "has contacts sufficient with the forum state to exercise jurisdiction under . . . the Florida [l]ong[-a]rm [s]tatute[] . . . ." (Doc. No. 11, p. 2 ("[Bieber] performs, markets, and promotes throughout the State of Florida.").) RC3 contends that "[a]ll of [Bieber's] performances and personal appearances have been done arguendo as regular business, including marketing efforts, to promote his business and business activities." (*Id.* at 4.) RC3 adds that Bieber's "[m]arketing [c]ompany, Bieber Time Merchandise, LLC, is under license to Bravado Merchandising and The Bridge Direct, Inc. . . . The Brid[g]e Direct, Inc. is based out of Boca Raton, Florida[,]" and its purpose "is to manufacture and market Justin Bieber figurines that bare [sic] his likeness, which is in turn the subject of this litigation." (*Id.* at 4-5; Ex. A (screenshot of www.justinbiebertoys.com); Ex. B (screenshot of the Florida Department of Division of Corporations website).) Additionally, RC3 submits that Bieber is listed as a recording artist for the Island Def Jam, which is part of the "Universal Music Group" that "employ[]s marketing representatives throughout [the state]" and is "under the Universal umbrella, which owns a theme park in Florida." (*Id.* at 5; Exs. C, D, E & F.) Finally, RC3 asserts that Bieber caused the cease-and-desist letter to be delivered to RC3 and other entities present in Florida. (*Id.*; Chamberlain[1] Decl., Doc. No. 12.)

---

[1] Robb Chamberlain is the president of RC3, Inc.

For all of these reasons, RC3 concludes that the Court should deny Bieber's motion to dismiss for lack of personal jurisdiction.[2]  For support, RC3 primarily relies on the Eleventh Circuit's opinion in *Sculptchair, Inc.*, 94 F.3d 623, and this Court's opinion in *Fuel Freedom Intern., LLC v. Maxma, L.C.*, Case No: 6:06-cv-488-Orl-31DAB, 2006 WL 2734313 (M.D. Fla. Sept. 25, 2006).  The Court finds both cases distinguishable under the instant set of facts.

In this case, the Court finds that it cannot exercise specific jurisdiction over Bieber based on § 48.193(1)(a) regardless of whether his business activities are sufficient to constitute "operating, conducting, engaging in, or carrying on a business or business venture" in Florida. RC3's declaratory judgment action does not arise from nor is it directly related to any of Bieber's business activities in Florida. This Court finds that intermittent concert performances and recording sessions are not directly related to the activity for which Bieber is being sued—asserting and policing his trademark and other intellectual property rights—"except perhaps in the very broadest sense." *See Madara*, 916 F.2d at 1516 n.7. In *Madara*, the plaintiff sued a world-renowned performing artist for libel in the Southern District of Florida. *Id.* at 1513. The lawsuit arose out of the defendant's interview on the subject of music business given to a nationally circulated magazine. *Id.* In asserting personal jurisdiction, plaintiff argued that "the contents of the defamatory statement, and the substantive issue at bar, arise out of the very activity that

---

[2] Alternatively, if the Court grants Bieber's motion to dismiss, RC3 argues that the Court should grant it leave to file a Second Amended Complaint to plead tortious interference with a business relationship, which would confer specific personal jurisdiction under Fla. Stat. § 48.193(1)(b). (Doc. No. 11, p. 5.) Without deciding whether such amendment would repair the personal jurisdiction issue, the Court grants RC3 leave to amend.

consumes the defendant's time in Florida and everywhere else—his business as a

musical performer." *Id.* at 1517. The Eleventh Circuit noted, however:

> "[C]oncert performances and the sale of records and the like are not related
> to the activity for which [the defendant] is being sued—libel—except
> perhaps in the very broadest sense. If [the defendant] could be sued on an
> unrelated cause of action because of concerts and record sales, then he
> likely would be amenable to suit in all the states of the union on any cause
> of action."

*Id.* at 1516 n.7.[3] While it may be said that Bieber promotes his image and likeness while

performing or recording songs, like the Eleventh Circuit in *Madara*, the Court declines to

make the broad connections necessary to conclude that RC3's declaratory judgment

action arises from or is directly related to those activities.

To the extent that RC3 argues that its action arises from the cease-and-desist

letter and the phone calls seeking to negotiate and threatening to sue if RC3 refused,

the Court agrees with Bieber and rejects this argument. While it may be said that the

cease-and-desist letter precipitated the instant action, a cease-and-desist letter does

not constitute "[o]perating, conducting, engaging in, or carrying on a business or

business venture in this state," as required under the specific jurisdiction statute. *See

Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000). "Where a state's long-

arm statute requires that the plaintiff's cause of action arise out of the defendant's

business activity in the forum state," such as here, "the mailing of . . . [a] cease[-]and[-

]desist letter[] threatening a [trademark] infringement lawsuit, without more, is of

insufficient quality and degree to be the 'transaction of business' in the forum state." *Id.*

---

[3] In *Madara*, the Eleventh Circuit was conducting this analysis pursuant to the Due
Process Clause prong as the Florida's long-arm statute jurisdictional test was satisfied
under § 48.193(1)(b). However, that is of no consequence here.

citing *Graphic Controls Corp. v. Utah Medical Prods., Inc.*, 149 F.3d 1382, 1387 (Fed. Cir. 1998).

Finally, the Court finds RC3's other contentions regarding Bieber's contacts insufficient to confer specific personal jurisdiction under § 48.193(1)(a). Without providing any legal reason why Bieber Time Merchandise, LLC's relationship with the Florida company The Bridge Direct, Inc. should be imputed onto Bieber, RC3 alleges that the licensor-licensee agreement between the two companies shows that Bieber conducts business in Florida. To the extent that RC3 assumes without arguing that an agency relationship between Bieber and The Bridge Direct, Inc. exists, this argument fails. "To support a finding of agency, Florida courts require (1) acknowledgment by the principal that the agent will act for him; (2) acceptance by the agent; and (3) control by the principal over the actions of the agent." *Virgin Health Corp. v. Virgin Enters. Ltd.*, Case No: 09-11438, 2010 WL 3273025, at *3 (11th Cir. Aug. 19, 2010) (citing *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n.5 (Fla. 1990)). The only evidence in the record is a screenshot of the www.justinbiebertoys.com website portraying an "All Rights Reserved" section listing The Bridge Direct, Inc. and its Florida address as a licensee of Bieber Time Merchandise, LLC.  This, without more, does not demonstrate that The Bridge Direct, Inc. is an agent of Bieber Time Merchandise, LLC, let alone one of Bieber.[4] Lastly, the Court rejects RC3's contention that Bieber's affiliation with the Island Def Jam recording company confers sufficient contact with Florida for this Court to exercise specific personal jurisdiction in this instance.

---

[4] Even if the Court were to assume that The Bridge Direct, Inc. is Bieber's agent, this litigation does not arise from nor is it related to the business activities of that company.

Taken collectively, the Court finds that the alleged contacts—concert performances, recording sessions, and even assuming that The Bridge Direct, Inc.'s and the Island Def Jam's connections to Florida show that Bieber himself engages in general course of business activity for pecuniary benefit—the present action does not arise from nor is it related to any of Bieber's activities in this state. Given that Florida's long-arm statute is to be strictly construed, contacts through which RC3 seeks to hold Bieber amenable to suit in Florida are unrelated to its declaratory judgment action claims. Having found that the allegations in the Amended Complaint fail to satisfy the requirements of Fla. Stat. § 48.193, the Court need not consider the due process prong of the personal jurisdiction inquiry.[5]

### III. CONCLUSION

Based on the foregoing, it is **ORDERED** as follows:

1.  Defendant Justin Bieber's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Doc. No. 10), filed on May 25, 2012, is **GRANTED**.

2.  Plaintiff RC3, Inc.'s Amended Complaint (Doc. No. 5) is dismissed without prejudice. RC3, Inc. may file a Second Amended Complaint on or before October 15, 2012.

---

[5] Additionally, the Court need not reach Bieber's alternative argument that the Court should use its discretion to decline to hear this "preemptive" declaratory judgment action.

**DONE** and **ORDERED** in Jacksonville, Florida, on September 17, 2012.

ROY B. DALTON JR.
United States District Judge

Copies furnished to:
Counsel of Record